## Schugar Appeal

*William Howard Colbert*, for appellants.

*J. Howard Devlin*, for zoning board of adjustment.

BROSKY, J., April 18, 1957.—This is an appeal from a decision of the Board of Adjustment of the City of Pittsburgh, Allegheny County, granting a variance and authorizing a permit for the occupancy of property situate in the second ward of the City of Pittsburgh, at 1700 Smallman Street, known as the Thorofare Building, by the Pittsburgh Association for the Improvement of the Poor, for the housing of homeless and destitute men, and for use of industrial work for the association, which consists of the collecting, storing and baling of paper and rags.

The Pittsburgh Association for the Improvement of the Poor filed its application on June 29, 1956, for a certificate of occupancy with the Department of Public Safety, Bureau of Building Inspection, of the City of Pittsburgh. The matter was referred to the

Board of Adjustment of the City of Pittsburgh, who, after due and proper notice, held a hearing on July 13, 1956. On July 20, 1956, the Board of Adjustment of the City of Pittsburgh rendered its decision granting the variance requested by the Pittsburgh Association for the Improvement of the Poor. An appeal was then taken to this court by Calvin Schugar et al., appellants. The Pittsburgh Association for the Improvement of the Poor then filed as intervenors in the case. A full hearing was then had and additional testimony was presented. The court, therefore, has the power to decide the case on the merits and render such decision as, to it, may appear just and proper: Dooling's Windy Hill, Inc., v. Springfield Township Zoning Board of Adjustment, 371 Pa. 290; Rolling Green Golf Club Case, 374 Pa. 450; Lord Appeal, 368 Pa. 121; Pincus v. Power, 376 Pa. 175; Walker v. Zoning Board of Adjustment, 380 Pa. 228. . . .

## Discussion

The basic question presented to this court for determination is whether, under the facts and circumstances of the instant case, the collecting, storing and baling of paper and rags by the Pittsburgh Association for the Improvement of the Poor, a charity, whose operations are assistance to poor families, providing food and shelter for homeless and destitute men and providing employment for such of them that are able to work, by the collection of waste paper, clothes, shoes and furniture, and the baling of paper and rags in the building it proposes to purchase and occupy in a light industrial district of the City of Pittsburgh, is an incidental use included in the charitable purposes of the association.

Then, too, of course, the court must also decide whether or not, under the circumstances, the action of the Board of Adjustment of the City of Pittsburgh in granting a variance to the Pittsburgh Association for

the Improvement of the Poor was arbitrary, capricious and unreasonable.

The provision of the Zoning Ordinance of the City of Pittsburgh, Ordinance No. 372, approved August 9, 1923, and subsequent amendments thereof, applicable to this case is section 6, which reads as follows:

"Section 6. LIGHT INDUSTRIAL DISTRICT. In this district the land may be used and buildings may be erected, altered or used for any purpose except the following:

"PROHIBITED USES: . . .

"(19) Junk, Scrap, Metal, Paper or Rags; Storage, Sorting or Baling:".

This ordinance was enacted pursuant to an enabling act of the Commonwealth of Pennsylvania known as the Second Class City Zoning Act of March 31, 1927, P. L. 98, 53 PS §25057. The enabling act, among other things, provides that a board of adjustment shall have the following powers:

"3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship so that the spirit of the ordinance shall be observed and substantial justice done."

Section 54 of the aforementioned ordinance of the City of Pittsburgh defines the powers of the board of adjustment as follows:

"54. POWERS. . . . "Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance, the Board shall have the power in passing upon appeals to vary or modify any of the regulations or provisions of this ordinance in harmony with its general purpose and intent, and in accordance with the general or specific rules herein contained, so that the spirit of

this ordinance shall be preserved, the public health, the public safety and the general welfare secured and substantial justice done."

There is no question, therefore, but that the board of adjustment has the authority to grant the variance requested in the present case if it is satisfied that there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the ordinance, provided that the spirit of the ordinance shall be preserved, the public health, the public safety and the general welfare secured and substantial justice done. The spirit of the zoning law is not to inflict a greater loss or hardship on the owner than is necessary to accomplish the purpose of the zoning. See Mutimer Company v. Wagner, 376 Pa. 575.

Factors to be considered and weighed with others by this court are whether: 1. The intended use of the subject property for the collecting, storing and baling of rags and paper is an incidental activity to the charitable purpose of the association; 2. whether such use would be in harmony with the character of the neighborhood and not unreasonably interfere with the use and enjoyment of adjoining property, and, 3. whether the Pittsburgh Association for the Improvement of the Poor, would suffer an unnecessary hardship by the refusal of the granting of a variance to carry on the business of collecting, storing and baling of paper and rags on the property in question. The court will consider each one of these in the order stated.

1. The Pittsburgh Association for the Improvement of the Poor is a charity. It does charity work among the poor families in the City of Pittsburgh, and for that purpose maintains a number of paid social workers. It collects old furniture, shoes and clothing which it renovates, repairs and gives or sells at what price people of humble means are able to pay. It provides

dining room facilities, dormitories, bedrooms for 500 or 600 homeless and destitute men, who are generally between the ages of 60 and 80. It provides recreation rooms, movies, television and an infirmary for the inhabitants. It collects old clothes and furniture which it repairs, and waste paper and rags which it bales and sells. It does this to give employment to men who cannot get a job elsewhere, and to keep these men off the streets. The baling of paper and rags is only one of the incidental features in the process of rehabilitating and caring for homeless and destitute men, and whether by this means the association makes money or loses money, this activity would still be carried on.

The counsel for appellants states in his brief that there is no difference between this association and an individual or a corporation or any other business enterprise in this respect, namely, the baling of paper and rags. The court does not agree with this statement of counsel. There is a difference. The purpose of baling rags and paper by the association is not a commercial venture carried on for profit, nor is there any evidence that this work by the association competes with other baling establishments in the area carrying on a commercial activity. The prime purpose of this association is still to provide a home for homeless and destitute men. While it is true that this baling operation produced a gross revenue of $105,000 in 1955, the association operated this feature of its operations at a net loss. Nevertheless, the association deems it advisable to provide employment for its men. The association has found out that in the rehabilitation and care of homeless and destitute men, it is better to have them working at something than to let them loaf and be vagrants on the streets of Pittsburgh. It is important to note that only six percent of the space of the building, namely, the first floor and the basement, would contain the storing and baling of rags and paper. The

court has viewed the premises and several buildings of the Pittsburgh Association for the Improvement of the Poor and is of the opinion that the baling and storing of rags and paper is only one phase of the integral charitable purposes of the association.

2. The collecting, storing and baling of papers and rags in the Thorofare Building by the association will not injure or tend to change the character of the neighborhood. While the particular district, in which is located the subject property, is zoned "light industrial," it harbors many zoning violations. Most of the baling of rags and papers of this area is done in this district. A large junkyard is nearby where an ice company was formerly located. Few people live in this district wedged in between commercial establishments.

Appellant states that he would consider it a blighted area in certain respects, for there are a lot of old buildings which should be condemned. The subject property itself borders a district zoned "heavy industrial"; on the north, or Smallman Street side of the property, are located the Pennsylvania Railroad tracks. As counsel for appellants has indicated, it is a highly congested area comprised mainly of commercial and industrial firms which include produce houses, hardware and discount houses, butter and egg businesses, wholesale grocers, service stations and office buildings flanked on each side by railroad tracks.

The association has been baling paper and temporarily storing it for the last 40 years. Its operations at both Forbes Street and Webster Avenue are carried on in districts zoned "commercial" where such operations have been permitted under a variance given to it. It now proposes to carry on the same operations in a less restricted district, a "light industrial" district. In the same neighborhood are located Pittsburgh's two largest commercial balers and collectors of rags and papers. The Atlas Paper Company is a large paper

collector located on the south side, and most all others are located in this "strip district." The Pennsylvania Stock Paper Co. had its block spot rezoned "heavy industrial," but another paper baling establishment operates its big paper and rag baling plant nearby in this light industrial district under a variance. The Goodwill Industries also bale paper in this same light industrial district. It would appear, therefore, that the use intended by the Pittsburgh Association for the Improvement of the Poor to carry on the baling of rags and paper would not be injurious to the property owners in the vicinity of the subject property, nor be contrary to the public interest.

3. There is considerable evidence to believe that the association will suffer an unnecessary hardship if the strict letter of the ordinance is enforced. The association has been definitely told by the Director of the Urban Redevelopment Authority of Pittsburgh that the authority will take over the Webster Avenue property, if necessary, the sheriff will be called upon to deliver possession. Hence, the association will be faced with a problem of where to house and feed some 250 to 300 men, and take care of its paper baling facility. The association looked at and examined and rejected 75 pieces of property. It has no place to go except to the Thorofare Building, which is suitable and available to carry on the charitable purposes of the association.

The intended use of the subject property will not, in any way, injure the public health, safety or general welfare of the community. After the association spends, as it so indicated, $125,000 to improve the Thorofare Building, it will be of benefit to the community. The building, which consists largely of a seven-story structure with a four-story addition, is not being used now except for the first floor. It has been for sale since 1939, but it is common knowledge that the trend of commercial and industrial buildings is now toward one-

story structures, and, therefore, this building does not render itself to commercial occupancy like the Penn Rose Building, which is located on Penn Avenue. The Thorofare Building, on the other hand, borders on a heavy industrial district, and railroad tracks of the Pennsylvania Railroad Company. If the strict letter of the zoning ordinance is followed, this property will no doubt, in the future, become dilapidated, unsightly and an impediment to civic improvement and an expense to the owner and possibly to the community. See Elkins Park Improvement Association Zoning Case, 361 Pa. 322. The association has operated the Webster Avenue property since 1929, and only a few years ago the Bigelow Apartments, one of Pittsburgh's most expensive buildings was erected within one square of it, and on the same street. This appears to be proof that appellant's complaint that the association's location in the Thorofare Building will depreciate the neighborhood is unfounded. For discussion of cases dealing with unnecessary hardship see the following: Dooling's Windy Hill, Inc., v. Springfield Township Zoning Board of Adjustment, supra; Triolo v. Exley, 358 Pa. 555; Kerr's Appeal, 294 Pa. 246; Valicenti's Appeal, 298 Pa. 276; Mutimer Company v. Wagner, supra.

The main objections or complaints of appellants appear to be threefold.

1. There is the fear of having about 300 homeless and destitute men housed in the Thorofare Building roaming the streets in and around the streets of the adjoining property owners. There is no basis for such a contention. L. C. Saussen, who was president of Duff's Iron City College, located on Duquesne Way from 1937 to 1949, stated that he usually had about 700 day students and 450 night students, that 80 percent of these students were girls, that in coming to school about 98 percent of them passed the association's home which was next door to that of the college

and that he had never received a complaint from either a boy or girl concerning the conduct of any resident of the Pittsburgh Association for the Improvement of the Poor. In addition to this, Samuel A. Baskin, president of the Peerless Wallpaper and Paint Company, located at 1018-1020 Forbes Street, said that he was one of the parties objecting to the granting of a permit to baling rags and paper in the building owned by the association on Forbes Street, which is next door. He now appeared in this proceeding in support of the association, stating that the men of the association are good neighbors, that in his establishment he has girl employes and that they have had no trouble with the men of the association residing in the Forbes Street Building. There is no loitering in front of the place, and in the evenings, one does not see the men at all.

2. The second complaint to the association is that the association will operate 25 trucks about the subject building, and will increase the traffic congestion. There is no evidence or proof of such an assertion. Mr. Speers, assistant manager of the association, made a traffic count for a two-day period. On one of those days, between 8 a.m. and 4:30 p.m., 75 trucks made deliveries or took merchandise away from the Thorofare Building, while the testimony of Calvin Schugar states that other trucks back in very early in the morning to bring fruits and vegetables to the market. If the association, with only 25 trucks, were to occupy the Thorofare Building, there would certainly be less traffic in that locality than under the present management. Furthermore, the association trucks are small one and one half ton Chevrolet trucks. Mr. Schugar states that the trucks which now serve the Thorofare Building are immense vehicles which block Mulberry Way.

3. The third complaint appears to be that the association will increase the fire hazard in the locality.

This again is mere speculation. All the evidence shows that the association bales its paper inside its buildings, and stores it inside for a short period of time until removed from the building. This is no different from activities of other large buildings in Pittsburgh, and department stores which bale paper as incidental to their business operations. As previously stated, the association has been conducting paper baling for the last 40 years, and has never had a fire in which the damage exceeded $75. Furthermore, the association gets the fire insurance policies at regular rates, for such activity is not considered a hazardous risk.

In view of all the testimony in this case, the court is of the opinion that the decision of the Board of Adjustment of the City of Pittsburgh was not arbitrary, capricious or unreasonable, nor contrary to the public interest in the spirit of the zoning law. . . .

### Order

And now, to wit, April 18, 1957, after consideration of the evidence adduced at trial and the excellent briefs presented by counsel for the parties, it is ordered that the appeal of Calvin Schugar et al., at the above number and term from the Board of Adjustment of the City of Pittsburgh, be and the same is hereby dismissed.

It is further ordered, adjudged and decreed that the decision of the Board of Adjustment of the City of Pittsburgh be sustained and that an occupancy permit be granted to the Pittsburgh Association for the Improvement of the Poor, to use the subject property at 1700 Smallman Street, Pittsburgh, known as the Thorofare Property, for industrial work consisting of the collecting, storing and baling of rags and paper as an incidental use included in the charitable purposes of the association.

Costs to be paid by appellants.